$5^{30}$

1    **PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

2    Name Bedolla    Adriana    A.    FILED
         (Last)         (First)        (Initial)

3    Prisoner Number ___ W912502 ___                    JAN 1 1 2008

4    Institutional Address B3·31-4up  P.O. Box 96

5    V.5.P.W.  Chowchilla, CA.  93610-0096

6    =================================================

7    UNITED STATES DISTRICT COURT
     NORTHERN DISTRICT OF CALIFORNIA

8    Adriana Arzola Bedolla        )        **0172**
     (Enter the full name of plaintiff in this action.)    )

9                                  )
                vs.                )        Case No. _____
10                                 )        (To be provided by the clerk of court)
     Tina Hornbeak(Warden)         )
11                                 )        **PETITION FOR A WRIT**
                                   )        **OF HABEAS CORPUS**
12   _____       )
                                   )
13   _____       )
                                   )
14   (Enter the full name of respondent(s) or jailor in this action)    )
                                   )
15   =================================================

16                    Read Comments Carefully Before Filling In

17   When and Where to File

18        You should file in the Northern District if you were convicted and sentenced in one of these

19   counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

20   San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in

21   this district if you are challenging the manner in which your sentence is being executed, such as loss of

22   good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

23        If you are challenging your conviction or sentence and you were not convicted and sentenced in

24   one of the above-named fifteen counties, your petition will likely be transferred to the United States

25   District Court for the district in which the state court that convicted and sentenced you is located. If

26   you are challenging the execution of your sentence and you are not in prison in one of these counties,

27   your petition will likely be transferred to the district court for the district that includes the institution

28   where you are confined. Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS        - 1 -

1    Who to Name as Respondent

2        You must name the person in whose actual custody you are. This usually means the Warden or

3    jailor. Do not name the State of California, a city, a county or the superior court of the county in which

4    you are imprisoned or by whom you were convicted and sentenced. These are not proper

5    respondents.

6        If you are not presently in custody pursuant to the state judgment against which you seek relief

7    but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8    custody you are now and the Attorney General of the state in which the judgment you seek to attack

9    was entered.

10   A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

11       1. What sentence are you challenging in this petition?

12           (a)    Name and location of court that imposed sentence (for example; Alameda

13                  County Superior Court, Oakland):

14       <u>San Benito County Superior  Court, Hollister</u>

15                  Court                              Location

16           (b)    Case number, if known <u>C RF 01 - 40316</u>

17           (c)    Date and terms of sentence <u>11·07·01   25 yrs. to Life</u>

18           (d)    Are you now in custody serving this term? (Custody means being in jail, on

19                  parole or probation, etc.)          Yes <u>X</u>    No _____

20                  Where?

21                  Name of Institution: <u>Valley State Prison for Women</u>

22                  Address: <u>P.O. Box 96  Chowchilla, CA 93610-0096</u>

23       2. For what crime were you given this sentence? (If your petition challenges a sentence for

24   more than one crime, list each crime separately using Penal Code numbers if known. If you are

25   challenging more than one sentence, you should file a different petition for each sentence.)

26       <u>273 ab - Assault upon a child under</u>

27   <u>the age of eight.</u>

28   <u>                                        </u>

PET. FOR WRIT OF HAB. CORPUS      - 2 -

1      3. Did you have any of the following?

2           Arraignment:                          Yes __X__    No _____

3           Preliminary Hearing:           Yes __X__    No _____

4           Motion to Suppress:            Yes __X__    No _____

5      4. How did you plead?

6           Guilty _____   Not Guilty __X__   Nolo Contendere _____

7           Any other plea (specify) _____ _____ _____

8      5. If you went to trial, what kind of trial did you have?

9           Jury __X__    Judge alone_____   Judge alone on a transcript _____

10    6. Did you testify at your trial?           Yes _____   No __X__

11    7. Did you have an attorney at the following proceedings:

12        (a)    Arraignment                 Yes __X__    No _____

13        (b)    Preliminary hearing        Yes __X__    No _____

14        (c)    Time of plea               Yes __X__    No _____

15        (d)    Trial                     Yes __X__    No _____

16        (e)    Sentencing               Yes __X__    No _____

17        (f)    Appeal                  Yes __X__    No _____

18        (g)    Other post-conviction proceeding   Yes __X__    No _____

19    8. Did you appeal your conviction?         Yes __X__    No _____

20        (a)    If you did, to what court(s) did you appeal?

21               Court of Appeal            Yes __X__    No _____

22               Year: _2001_    Result:_Denied_____

23               Supreme Court of California    Yes __X__    No _____

24               Year: _2001_    Result:_Denied_____

25               Any other court          Yes _____   No _____

26               Year: __ ____    Result:_____

27

28        (b)    If you appealed, were the grounds the same as those that you are raising in this

| | | | |
|---|---|---|---|
| 1 | | petition? | Yes $\times$    No_____ |

    1                    petition?                  Yes $\times$    No_____

    2       (c)   Was there an opinion?     Yes_____    No_$\times$_

    3       (d)   Did you seek permission to file a late appeal under Rule 31(a)?

    4                                       Yes_____    No_____

    5            If you did, give the name of the court and the result:

    6

    7

    8  9. Other than appeals, have you previously filed any petitions, applications or motions with respect to

    9  this conviction in any court, state or federal?     Yes_____    No_$\times$_

  10         [Note: If you previously filed a petition for a writ of habeas corpus in federal court that

  11  challenged the same conviction you are challenging now and if that petition was denied or dismissed

  12  with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

  13  for an order authorizing the district court to consider this petition. You may not file a second or

  14  subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28

  15  U.S.C. §§ 2244(b).]

  16     (a)   If you sought relief in any proceeding other than an appeal, answer the following

  17             questions for each proceeding. Attach extra paper if you need more space.

  18          I.     Name of Court: _____

  19               Type of Proceeding: _____

  20               Grounds raised (Be brief but specific):

  21                   a._____

  22                   b._____

  23                   c._____

  24                   d._____

  25               Result:_____Date of Result:_____

  26          II.    Name of Court: _____

  27               Type of Proceeding: _____

  28                Grounds raised (Be brief but specific):

PET. FOR WRIT OF HAB. CORPUS    - 4 -

1          a._____

2          b._____

3          c._____

4          d._____

5          Result: _____ Date of Result:_____

6   III.   Name of Court: _____

7          Type of Proceeding: _____

8          Grounds raised (Be brief but specific):

9          a._____

10          b._____

11          c._____

12          d._____

13          Result: _____ Date of Result:_____

14   IV.   Name of Court: _____

15          Type of Proceeding: _____

16          Grounds raised (Be brief but specific):

17          a._____

18          b._____

19          c._____

20          d._____

21          Result: _____ Date of Result:_____

22   (b)   Is any petition, appeal or other post-conviction proceeding now pending in any court?

23          Yes _____    No_____

24          Name and location of court: _____

25 **B. GROUNDS FOR RELIEF**

26      State briefly every reason that you believe you are being confined unlawfully. Give facts to

27 support each claim. For example, what legal right or privilege were you denied? What happened?

28 Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS     - 5 -

1   need more space. Answer the same questions for each claim.

2        [Note: You must present ALL your claims in your first federal habeas petition. Subsequent

3   petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4   499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5        Claim One: Conviction was erroneously obtained by

6   the admittance of prior injury evidence.

7        Supporting Facts: The prosecution treated the hearsay

8   statements of prior injury as an important

9   part of the case. In doing so the prosecutor

10  encouraged the jury to assume that I had

11       Claim Two: Ineffective Assistance of Counsel (Cont. next page.)

12   _____

13       Supporting Facts: Defense counsel partial failure to

14  object to victims alleged hearsay statements

15  may be reviewed under exceptions to the

16  rule of evidence code sub. section 353: that

17       Claim Three: _____ (Cont. on pg. 5)

18   _____

19       Supporting Facts: _____

20   _____

21   _____

22   _____

23        If any of these grounds was not previously presented to any other court, state briefly which

24   grounds were not presented and why:

25   _____

26   _____

27   _____

28   _____

1  inflicted the prior injuries, therefore directing the
2  jury to conclude that I was the abuser/murderer.
3  Being that prosecution had charged me with 187(a)
4  Second degree murder and 273ab assault upon a
5  child under the age of eight, it was required to
6  prove the victims death was caused by my
7  intentional acts. Proof of victims battered child
8  Syndrome Status helped to do just that, although
9  not linked by any direct evidence.

10  Prosecution witness Dr. Robert Lawrence expert
11  in forensic pathology, testified after reviewing the
12  autopsy report, ex-rays, and CAT scans of victims
13  body and concluded cause of death was a
14  combination of blunt force and shaking trauma to
15  the head. There was no autopsy evidence of
16  Battered Child Syndrome, no evidence of old fractures,
17  or fractures that were older than fresh. To Dr.
18  Robert Lawrence this case looks like one episode
19  of a beating. Furthermore Dr. Skarsgard the
20  pediatric surgeon who was primarily responsible
21  for victims treatment for her first twenty-four
22  hours at Stanford Hospital, testified that there
23  was no clinical history of non-accidental injury
24  in this case. The primary evidence of that
25  history came from one source, victims hearsay
26  statements. The extreme weakness of the
27  corraboration makes it more likely that the
28  erroneous admission of victims hear say

1

1  Statements was harmful. In contrast, in the
2  present case, victims alleged hearsay statements
3  were reported to the jury through the testimony
4  of witnesses who had a motive to fabricate.
5  Librada Perez given the ongoing acrimonious
6  custody fights that had been occuring for months
7  prior to victims death, had a motive to
8  fabricate past accusations by victim. Virtually
9  all of the above statements were made either
10 in direct response to adult questioning, or in
11 context of Ms. Perez and Ms. Hernandez vigilance
12 about victims physical appearance, and so may
13 not be considered spontaneous. Furthermore
14 victim never repeated these statements to
15 anyone other than the two witnesses offering
16 the hearsay testimony. Thus there was evidence
17 presented at trial that both of victims parents
18 questioned her about physical abuse by the
19 other. Increasing the probability that victims
20 statements were not spontaneous at all, but
21 manipulated and prompted by her adult
22 questioners. In the present case, in the video-
23 tape that Mr. Bedolla prepared for the
24 custody litigation, victim said that her
25 mother (Ms. Perez) had cut her hair. Yet Ms.
26 Perez testified that it was victim who cut
27 her own hair. It is not clear whether victim
28 or Ms. Perez is telling the truth, but Ms. Perez

2

1  was essentially contending that victim fabricated
2  the accusation that Ms. Perez had cut her hair.
3  Ms. Perez herself did not always find victims
4  statements to be reliable. When victim said she
5  had hurt her face by falling from the car, rather
6  than from abuse by me, Ms. Perez did not believe
7  her. The picture that emerges is that of a child
8  caught between parents who each want custody
9  of her, and prompt her to make accusations of
10 physical abuse and other inappropriate behavior.
11       In summary, because section 1360 is not a
12 firmly rooted hearsay exception, victims statements
13 are presumptively inadmissable under the Confront-
14 ation Clause, continuing objection based on the
15 lack of trustworthiness of alleged statements would
16 have been futile given the trial courts categorical
17 belief in the trustworthiness of young children.
18 There is nothing about her statements that is
19 particularly trustworthy to overcome this presum-
20 ption. On the contrary, there is reason to believe
21 those statements were unreliable and made in
22 response to prompting by adult questioners.
23 Therefore, admitting victims alleged hearsay
24 statements violated my rights under the Confront-
25 ation Clause. If the jury had not been misdirec-
26 ted and prejudiced by victims hearsay statements
27 it, they would have likely convicted me of
28 Voluntary manslaughter rather than second degree

3

1    murder. There is evidence the jury had some
2    concerns about the strength of the prosecutions
3    case regarding my intentions and mental state.
4    Specifically, while the government charged me
5    with first degree murder on count (1), the jury
6    found me guilty only of second degree murder.
7    The government cannot show beyond a reasonable
8    doubt that the jury would not have convicted
9    me of some lesser offense, at least as to count (1),
10   if it had not been repeatedly exposed to the
11   victims unreliable hearsay statements regarding
12   past alleged abuse by me.

13
14
15
16   Conclusion :
17          For the reasons stated in this writ, the
18   judgement against myself (Ms. Arzola) should be
19   reversed and this case remanded for a new
20   trial.

21
22
23
24
25
26
27
28

4

(Claim 2 pg 2)

1  defense counsel had sufficiently preserved
2  the issue for review by his previous objection,
3  and that any further objection by defense
4  counsel would have been futile, given the
5  courts belief that young children are incapable
6  of fabrication and the courts earlier rulings
7  on counsels evidentiary objections. Where
8  counsel did preserve at least part of my
9  original objection to victims alleged hearsay
10 statements. In fact an appellate court has
11 considered the very issue raised here. Whether
12 a childs hearsay statements were admissable
13 pursuant to siction 1360, even though defense
14 counsel had not raised every objection
15 possible, because defense counsel believed
16 such objection would be futile. There is no
17 reasonable tactical reason for defense counsel
18 failing to include Confrontation Clause as an
19 additional basis for objection to the hearsay
20 statements. When defense counsel was already
21 objecting to other alleged hearsay statements.
22 Resulting in hearsay statement to be erroneou-
23 sly admitted.
24      Failure to object was prejudicial be-
25 cause the erroneous admission of untrustworthy
26 hearsay statements was prejudicial. The pros-
27 ecution made it clear during the 1360 section
28 hearing during examination of expert witnesses,

5

and in his closing argument that the admission
of victims hearsay statements were crucial to
the prosecution. Prosecution raised questions
based on alleged hearsay statements to two
expert witnesses who were not involved in
victims treatment or autopsy to prove that
victims death was not the result of one act
of rage, but part of a larger Battered Child
Syndrome. The ultimate significance of the
erroneous admission of alleged hearsay state-
ments to the defense was quite high. During
the defense closing, defense counsel repeatedly
returned to the theory that at most, the
evidence showed this was one episode of
misdirected rage. In conclusion if the jury
had not been repeatedly exposed to the
unreliable hearsay statements regarding
past alleged abuse, my defense would have
been accepted and I would have likely
been convicted of voluntary manslaughter
rather than second degree murder. Further-
more there is evidence that the jury had
some concerns about the strength of the
prosecutions case regarding my intentions
and mental state. Resulting in the
admission of hearsay statements to be
prejudicial due to the weight given to
them by the prosecution. In which the

1   Statements so damaged defense counsels ability
2   to convince the jury to convict me of
3   voluntary manslaughter as opposed to second
4   degree murder.
5
6                            please see attachment
7                            enclosed.
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    List, by name and citation only, any cases that you think are close factually to yours so that they

2  are an example of the error you believe occurred in your case.  Do not discuss the holding or reasoning

3  of these cases:

4  _Estelle v. McGuire - 902 F.2d 749 (9th Cir. 1990)_

5  _Osborne v. Wainwright - 720 F.2d 1237 (11th Cir. 1985)_

6  _People v. Bradford 1997 15 Cal. 4th 1229, 1323_

7  Do you have an attorney for this petition?                        Yes____    No_✗_

8  If you do, give the name and address of your attorney:

9  _____

10    WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11  this proceeding.  I verify under penalty of perjury that the foregoing is true and correct.

12

13  Executed on  _12-20-2007_          _Adriana Anzola Bedolla_

14              Date                          Signature of Petitioner

15

16

17

18

19

20  (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS        - 7 -

Attachment : A

Pgs. 30-34 section "B"
&
Pgs. 50-55 section "F"

witness, Olivia Hernandez, also testified concerning a statement allegedly made by Ilse. Defense counsel did not object to that testimony. (RT 397.)

This court reviews the trial court's admission of Ilse's statements under Evidence Code section 1360 for abuse of discretion. (*People v. Roberto V.* (2001) 93 Cal.App.4th 1350, 1367.) To the extent that admission of these statements may have violated the U.S. Constitution, this court independently reviews whether the indicia of trustworthiness and reliability satisfy the Confrontation Clause. (*Lilly v. Virginia* (1999) 527 U.S. 116, 136-137.)

## B.    Appellant Has Not Waived Her Ability to Assert the Inadmissibility of Any of these Hearsay Statements

Ms. Arzola has not waived her ability to assert the inadmissibility of any of Ilse's hearsay statements as not meeting the criteria for admission under Evidence Code section 1360. With respect to the hearsay statements offered through the testimony of Ms. Perez at Reporter's Transcript, pages 337-338 and 353-354, the government may claim that appellant has waived her ability to argue those statements were inadmissible pursuant to section 1360 on the grounds they were insufficiently trustworthy, because after this testimony, defense counsel moved to strike these statements only on the ground that they were not corroborated. (RT 372.) However, appellant has not waived the argument that Ilse's hearsay statements were insufficiently trustworthy to be admissible under section 1360 both because defense counsel had earlier made sufficient objection to preserve this issue, and because a motion to strike on trustworthiness grounds would have been futile.

30

First, defense counsel had already preserved this issue. The general rule is that an

objection to evidence must "make clear the specific ground of the objection of motion . .

. ." (Evid. Code § 353.) According to the California Supreme Court, the reason

underlying this rule is clear:

> failure to identify the specific ground of objection denies the opposing
> party the opportunity to offer evidence to cure the asserted defect.
> [Citation.] "While no particular form of objection is required [citation], the
> objection must be made in such a way as to alert the trial court to the nature
> of the anticipated evidence and the basis on which exclusion is sought, and
> to afford the People an opportunity to establish its admissibility."

(*People v. Holt* (1997) 15 Cal.4th 619, 666-667, quotation omitted; see also *People v.*

*Felix* (1999) 70 Cal.App.4th 426, 431 (belated objection to evidence preserved issue for

review where prosecution given opportunity to establish admissibility).)

Given these criteria, defense counsel's initial objection was sufficient to preserve

the issue of the trustworthiness of Ilse's statements for appeal. When asking for a section

1360 hearing, and during the course of that hearing, defense counsel made clear he was

objecting in part because Ilse's hearsay statements were insufficiently trustworthy. (RT

341-351.) At the conclusion of the section 1360 hearing, the court said it would allow

Ms. Perez to testify concerning Ilse's hearsay statements subject to a motion to strike.

(RT 352.) Given defense counsel's emphasis on trustworthiness before and during the

section 1360 hearing, the prosecution was on notice that it had to put forth its best

evidence regarding trusthworthiness during its examination of Ms. Perez. No other

evidence would have been offered had defense counsel merely repeated the

31

trustworthiness ground for the objection in his motion to strike Ms. Perez's testimony regarding Ms. Arzola allegedly pulling Ilse's hair.

Furthermore, any further objection by defense counsel after the section 1360 hearing regarding trustworthiness would have been futile. The trial court had already made it quite clear that it did not consider it possible for two-and-a-half year old Ilse to fabricate her allegations of prior abuse by Ms. Arzola. At first, the court merely stated this as fact. (RT 350.) When defense counsel attempted to challenge this assumption by the court, saying "I disagree with the court that kids can't fabricate," the court immediately cut defense counsel off, saying, "[l]et's don't argue about my thoughts. Let's stick to the case here." (RT 351.) Later, the court elaborated, as follows:

> [i]f [Ilse is] missing some hair and somebody asked her what happened, and the child answers truthfully, whatever the child says, I mean, we have to assume that's what – the child has a relation with both of these people and there's no reason to think it wouldn't be truthful in the sense such that the child can describe it.

(RT 352.) Thus, the court made it clear that any further objections based on the trustworthiness of Ilse's statements would be futile. (See *People v. Roberto V.*, *supra*, 93 Cal.App.4th at 1365, fn. 8, citing *People v. Sandoval* (2001) 87 Cal.App.4th 1425, 1433, fn. 1 ["argument or objection not required to preserve point when would have been futile"].)

Similarly, Ms. Perez's testimony regarding Ilse's hearsay statement that, "Nana hits," which defense counsel did not object to at all, and Olivia Hernandez's accounting

of a hearsay statement allegedly made by Ilse, may be examined for erroneous admission on appeal because this statement was made after defense counsel's earlier arguments and objections had all been overruled. (RT 391, 397.) Thus, any further objection to this whole category of evidence was futile, and no further objection was necessary to preserve the issue for appellate review. (See *People v. Brooks* (1979) 88 Cal.App.3d 180, 186 (where hearsay objection overruled with respect to one witness, defense counsel need not make objection to same type of evidence from another witness to preserve issue for review).)

The government may also point to the fact that when defense counsel moved to strike a portion of Ms. Perez's testimony, he mentioned only the hair pulling allegations, and not the alleged hearsay statements that Ilse said Ms. Arzola had hit her. (RT 372.) If this court is not inclined to review the issue that Ilse's hearsay statements that Ms. Arzola hit her were erroneously admitted for one of the reasons cited above, then this court should consider that issue on the grounds that defense counsel rendered ineffective assistance of counsel by failing to move to strike those alleged hearsay statements.

Ineffective assistance of counsel may result from counsel's failure to make a meritorious motion to suppress evidence. (*Kimmelman v. Morrison* (1986) 477 U.S. 365, 375.) Also, "'a question of professional competence is inevitably aroused by a defense attorney's deliberate failure to object to potentially inadmissible . . . evidence and by the implicit surrender of ability to exploit the inadmissibility on appeal.'" (*People v. Stratton*

33

(1988) 205 Cal.App.3d 87, 93.) In order to show the court that an attorney's failure to object to the admission of evidence constituted ineffective assistance of counsel, "'the defendant must affirmatively show that the omissions of defense counsel involved a critical issue, and that the omissions cannot be explained on the basis of any knowledgeable choice of tactics.'" (*People v. Stratton*, *supra*, 205 Cal.App.3d at 94, quotation omitted.)

Showing that the omissions of defense counsel involved a critical issue is akin to showing prejudice. In this case, as will be shown in Section F of this brief, any such failure by counsel to object to Ilse's alleged hearsay statements that Ms. Arzola hit her was prejudicial, because admission of Ilse's hearsay statements was prejudicial. (*Strickland v. Washington* (1984) 466 U.S. 668, 687 (to prove ineffective assistance of counsel, appellant must show he or she was prejudiced by counsel's error).) As to the second *Stratton* requirement, there is no reasonable tactical reason for defense counsel failing to object to Ilse's alleged hearsay statements that Ms. Arzola hit her, particularly when defense counsel already was objecting to Ilse's alleged hearsay statements that Ms. Arzola had pulled her hair. (See *People v. Pope* (1979) 23 Cal.3d 412, 426 (court may consider ineffectiveness claim on direct appeal if record reveals there "simply could be no satisfactory explanation" for trial counsel's action).) Therefore, this court should consider on its merits the argument that all of Ilse's alleged hearsay statements, whether put forward through the testimony of Ms. Perez or Ms. Hernandez, were erroneously admitted.

34

other inappropriate behavior.

In summary, because section 1360 is not a firmly rooted hearsay exception, Ilse's statements are presumptively inadmissible under the Confrontation Clause. There is nothing about her statements that is particularly trustworthy to overcome this presumption. On the contrary, there is reason to believe those statements were unreliable and made in response to prompting by adult interviewers. Therefore, admitting Ilse's alleged hearsay statements violated Ms. Arzola's rights under the Confrontation Clause.

### F.    Error Was Prejudicial

#### 1.    Government Cannot Show Error Was Harmless Beyond a Reasonable Doubt

To the extent that the court's admission of Ilse's statements violated Ms. Arzola's Confrontation Clause rights, this court must reverse unless the error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24; *Lilly v. Virginia*, *supra*, 527 U.S. at 139-140.) "Review for harmless error requires not only an evaluation of the remaining incriminating evidence in the record, but also 'the most perceptive reflections as to the probabilities of the effect of error on a reasonable trier of fact.'" (*United States v. Harrison* (9th Cir. 1994) 34 F.3d 886, 892, quoting *Standen v. Whitley* (9th Cir. 1993) 994 F.2d 1417, 1423, other quotations omitted.)

In the present case, the prosecution made it clear during the section 1360 hearing, during the examination of witnesses, and in his closing argument that the admission of Ilse's statements was crucial to the prosecution. Furthermore, the admission of Ilse's

statements damaged defense counsel's ability to convince the jury to convict Ms. Arzola

of voluntary manslaughter as opposed to second degree murder.  As a result, the

prosecution will not be able to show that the erroneous admission of Ilse's alleged

hearsay statements was harmless beyond a reasonable doubt.

    During the hearing regarding the admissibility of Ilse's statements, the prosecutor

stated that the statements were quite important to the prosecution:

> [a]s this is a course of conduct, the incident – first incident we're aware of
> is November, the second incident being sometime just before the homicide
> occurred, and then, of course, the homicide itself is extremely relevant to
> the issues before the jury.

(RT 342-343.)  The prosecution put questions  based on Ilse's alleged hearsay statements

to the two expert witnesses called who were not involved in her treatment or autopsy, to

prove that Ilse's death was not the result of one act of rage, but part of a larger battered

child syndrome.  The prosecutor asked Mr. Lareau, the "independent family violence

allegation specialist," if it would be significant that other injuries occurred to a child

while in a suspected person's care, to determine whether battered child syndrome

applied.  (RT 255, 280.)  Mr. Lareau replied that this would be significant, and it would

be significant if a clump of hair was pulled from the child's head while in the person's

care.  (RT 280-281.)

    The prosecutor had difficulty with the testimony of the other non-treating expert

witness, Dr. Robert Lawrence, who testified as an expert in forensic pathology.  (RT

887-888.)  Dr. Lawrence testified there was no autopsy evidence of battered child

51

syndrome, no evidence of old fractures, healing fractures, injuries that were older than fresh, that would show that Ilse had been beaten over a period of time. (RT 890.) This testimony conflicted with that of other medical witnesses, who testified they did find evidence of battered child syndrome by analyzing Ilse's current bruises and injuries. (RT 774-775, 873-874, 884.) To overcome this difficulty, the prosecution asked Dr. Lawrence if evidence of "an alleged incident of hair pulling on November 20" would change his opinion. (RT 891, 900.) Dr. Lawrence replied that he did not have a strong opinion either way, and that he would want someone other than himself to analyze any anecdotal episodes. (RT 900.) Dr. Lawrence also said reports of these earlier incidents would be consistent with battered child syndrome. (RT 891.)

The prosecutor's argument during the section 1360 hearing as well as the prosecutor's questions to witnesses demonstrated that the prosecution believed Ilse's hearsay statements to be an important part of the case against Ms. Arzola. Therefore, the admission of this evidence was prejudicial. (See *People v. Cruz* (1964) 61 Cal.2d 861, 868 ("[t]here is no reason why we should treat this evidence as any less 'crucial' than the prosecutor – and so presumably the jury – treated it").)

The admission of Ilse's statements also was prejudicial due to the weight given those statements by the prosecution during closing argument. (*People v. Woodard* (1979) 23 Cal.3d 329, 341, superseded o.g., by Art. I, § 28 (reversal ordered where the prosecutor exploited erroneously admitted evidence during closing argument); cf. *People*

52

*v. Esqueda* (1993) 17 Cal.App.4th 1450, 1487 (prejudice shown, in part, by prosecutor's reliance on defendant's statements during closing argument).)

During the initial closing argument, the prosecutor referred to Ms. Perez's belief "that her daughter's hair was being pulled," and her subsequent report to the Gilroy Police Department, as one of the important incidents leading up to Ilse's death. (RT 1134-1135.) During the final closing argument, the prosecutor immediately focused on the evidence, including Ilse's alleged hearsay statements, which alleged proved there was evidence of child abuse syndrome in this case. (RT 1189-1191.) Later, the prosecutor again tried to minimize the damage of Dr. Lawrence's report that "this case looks most like one episode of beating" by reminding the jury that when presented with the hypothetical evidence that Ilse fell from a car seat, "where there was hair pulling, or there was (sic) other incidents of non-specific dates where the child was hit in the face," Dr. Lawrence said this would help him establish that Ilse had been the victim of battered child syndrome. (RT 1201.)

From an evidentiary standpoint, the evidence that Ilse had been the victim of battered child syndrome was conflicting. Specifically, Dr. Lawrence, the expert forensic pathologist, found no evidence in the autopsy of battered child syndrome. (RT 885-890.) Furthermore, Dr. Skarsgard, the pediatric surgeon who was primarily responsible for Ilse's treatment for her first twenty-four hours at Stanford Hospital, testified there was no clinical history of nonaccidental injury in this case. (RT 826.) Indeed, the primary

evidence of that "history" came from one source, Ilse's hearsay statements.

The presence of corroborating evidence may be considered to determine if the admission of a hearsay statement in violation of the Confrontation Clause was harmless error. (*Wright* at 823.) In the present case, the corroborating evidence was weak. There are only two scraps of such evidence. First, Ms. Perez, who had an ongoing motive to fabricate given the custody disputes over Ilse, said she saw hair missing from behind Ilse's ear in November 2000. (RT 337.) Second, Dr. Hain, who performed the autopsy in this case, testified that, while he did not find evidence that any of Ilse's hair was missing, found that there were areas of Ilse's hair that came out of her scalp easily. (RT 868.) It was only due to the fact that parts of Ilse's hair came out easily that he could not rule out the possibility that Ilse's hair had been pulled in the past. (RT 868.) Thus, the only objective witness to testify about the physical condition of Ilse's hair did not confirm Ms. Perez's testimony or Ilse's alleged hearsay statements that tufts of her hair had been pulled out entirely. The extreme weakness of the corroboration makes it more likely that the erroneous admission of Ilse's hearsay statements was harmful. (*Wright* at 823.) Furthermore, there is absolutely no corroboration of Ilse's hearsay statements that she had been hit by Ms. Arzola in the past.

The ultimate significance of the erroneous admission of Ilse's alleged hearsay statements to the defense was quite high. During the defense closing, defense counsel repeatedly returned to the theme that at most, the evidence showed this was one episode

of misdirected rage by Ms. Arzola. (RT 1178, 1181-1182, 1184-1185.) There was ample evidence presented at trial that Ms. Arzola could have repeatedly and increasingly felt provoked by Ms. Perez, either because Mr. Bedolla went through a period of having sexual relations with both of them, or due to flaring arguments that occurred during the exchange of Ilse at visitation times, or the ongoing custody battles and Ms. Perez's contacts with police. (RT 210-211, 357, 366, 377-380, 393, 522-523, 535-537, 560-561, 569-570; People's Exhibit 23A.) If the jury had accepted this defense, it would likely have convicted Ms. Arzola of voluntary manslaughter rather than second degree murder. There is evidence the jury had some concern about the strength of the prosecution's case regarding Ms. Arzola's intentions and mental state. Specifically, while the government charged Ms. Arzola with first degree murder on Count I, the jury found her guilty only of second degree murder. (CT 54, 184-185; RT 1253-1254; see *People v. Epps* (1981) 122 Cal.App.3d 691, 698 ("[i]n view of the verdict's reflecting the jury's selective belief in the evidence, we cannot conclude otherwise than that the admission of the Sandra and Charlotte evidence was prejudicial requiring reversal . . . .").) The government cannot show beyond a reasonable doubt that the jury would not have convicted Ms. Arzola of some lesser offense, at least as to Count 1, if it had not been repeatedly exposed to Ilse's unreliable hearsay statements regarding past alleged abuse by Ms. Arzola.

Case Number:_____

# CERTIFICATE OF FUNDS

## IN

## PRISONER'S ACCOUNT

I certify that attached hereto is a true and correct copy of the prisoner's trust account

Statement showing transactions of ___BEDOLLA, A. W-92502_____

(Prisoner name)

For the last six months at___VALLEY STATE PRISON FOR WOMEN_____

(Name of Institution)

where she is currently confined.

I further certify that the average deposits each month to this prisoner's account for the

most recent 6-month period were $ _-0-_____ and the average balance in the

prisoner's account each month for the most recent 6-month period was $ _-0-_____

***SEE ATTACHED STATEMENT OF THE TRUST ACCOUNT MAINTAINED
THE WITHIN INSTRUMENT IS A CORRECT
BY THIS OFFICE
ATTEST:
CALIFORNIA DEPARTMENT OF CORRECTIONS

Dated:_APRIL 16, 2004_____

Authorized Officer of the Institution
TRUST OFFICE

R. GRISSOM, CORRECTIONAL BUSINESS MANAGER I

11

(rev. 5/96)

REPORT ID: TS3030                                        REPORT DATE: 04/16
                                                         PAGE NO:

                        CALIFORNIA DEPARTMENT OF CORRECTIONS
THE WITHIN INSTRUMENT IS A CORRECT
COPY OF THE TRUST ACCOUNT MAINTAINED   VALLEY STATE PRISON FOR WOMEN
BY THIS OFFICE                         INMATE TRUST ACCOUNTING SYSTEM
ATTEST:
CALIFORNIA DEPARTMENT OF CORRECTIONS   INMATE TRUST ACCOUNT STATEMENT
BY
TRUST OFFICE            FOR THE PERIOD: OCT. 01, 2003 THRU APR. 16, 2004

ACCOUNT NUMBER : W92502                 BED/CELL NUMBER: B 2 000000000202
ACCOUNT NAME   : BEDOLLA, ADRIANA       ACCOUNT TYPE: I
PRIVILEGE GROUP: A
                        TRUST ACCOUNT ACTIVITY

    << NO ACCOUNT ACTIVITY FOR THIS PERIOD >>


                        CURRENT HOLDS IN EFFECT

    DATE        HOLD
    PLACED      CODE            DESCRIPTION          COMMENT      HOLD AMOUNT
  ----------    ----    ------------------------------  ----------  -----------
  10/03/2003    H105    NOTARY SERVICES HOLD        0707NOTARY        10.00
  02/19/2004    H107    POSTAGE HOLD                1666 JAN04         2.15

                        TRUST ACCOUNT SUMMARY

   BEGINNING       TOTAL         TOTAL       CURRENT        HOLDS      TRANSACTION
   BALANCE       DEPOSITS    WITHDRAWALS    BALANCE       BALANCE     TO BE POSTE
  -------------  -----------  -------------  -------------  -----------  ------------
      0.00          0.00          0.00          0.00         12.15         0.0
  -------------  -----------  -------------  -------------  -----------  ------------

                                                            CURRENT
                                                           AVAILABLE
                                                            BALANCE
                                                          -------------
                                                              12.15
                                                          -------------

### P R O O F   O F   S E R V I C E

Adriana Arzola Bedolla        )   Cs. No. _____
       Petitioner/Defendant,)
                      )      (FRCivP Rule 4)
         v          )      (FRCivP Rule 5)
                      )      (CCP §§1011, 1012)
Tina Hornbeak_____,(warden) )      (CCP §§1013, 1013(a))
       Respondent(s)        )

I, the undersigned, certify that I am over the age of eighteen
years, and a ($\times$) party/(__) non-party to this action.

On _____, 2007, I served copy of _Petition for_
___Writ of Habeas Corpus_____

_____

($\times$) by placing in an envelope addressed to the person(s) herein listed,
and by depositing envelope with Correctional Officer _____with
First Class postage (or CDC-193) attached and for delivery to the United
States Postal Service; or (__) by personal service upon person herein
listed at _____hours:

           Clerk of the United States District
           Court for the Northern District of California
           450 Golden Gate Avenue, Box 36060
           San Francisco, CA. 94102

I declare under the penalty of perjury that the foregoing is
true and correct.  Executed this 20 day of December 2007
at ___Chowchilla___, ___California___ in _Madera___ County.
   (city)         (state)       (county)

                     Adriana Arzola Bedolla
                     (signature)     DECLARANT

                 Print Name_Adriana Arzola Bedolla_
                 __Valley State Prison for Women__
                 W# 72502___, Unit B3 Dorm 31 Bed 44
                 Address ___P.O. Box 96___
                 City _Chowchilla___, State _CA___
                 Zip __93610-0096_